IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


LOUIS LEVIN,                          :

       Plaintiff,                :
                                    Case No. 3:09cv287

       vs.                       :
                                      JUDGE WALTER HERBERT RICE

BARRY KAYE & ASSOCIATES,             :
INC., et al.,                        :

       Defendant.                :


---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(DOC. #40)

---

Plaintiff Louis Levin ("Plaintiff" or "Levin") brings this litigation under Ohio's

Securities Statutes, also referred to as Ohio's Blue Sky Law, § 3905.20 of the

Ohio Revised Code and the common law of Ohio against Barry Kaye & Associates,

Inc. ("Barry Kaye"), Howard Kaye, Howard Kaye Insurance Agency, Inc. ("Kaye

Insurance"), Edward S. Zuckerman ("Zuckerman") (collectively "Kaye Defendants")

and Transamerica Life Insurance Co. ("Transamerica").[1]  This case is now before

the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. #40).  Since

this litigation is before the Court on the Plaintiff's request for partial summary

---

[1]Kaye Insurance is the legal successor to Barry Kaye, and Zuckerman represented
Barry Kaye and Kaye Insurance in the area of insurance marketing.

judgment, the Court sets forth, in the manner most favorable to the Defendants, the relevant facts cited by them. The Court begins, however, by setting forth the most basic facts giving rise to this litigation, none of which is controverted.

Plaintiff purchased a life insurance policy from Barry Kaye, paying $322,118.89 as the premium for the first 25 months of the policy, which is referred to as the "incontestability period," because the insurer could not contest the policy after that period.[2] The policy was issued by Transamerica. After the policy had been issued, it was discovered that Plaintiff's life expectancy was greater than expected; as a result, there was no market to sell the policy on his life at a profit.[3] As a consequence, he initiated this litigation.

Plaintiff is a successful businessman. In early 2005, Zuckerman called Plaintiff's brother, Allen Levin, in response to his (Allen Levine's) telephone call to Barry Kaye inquiring about purchasing and subsequently selling life insurance policies. Allen Levin introduced Plaintiff to Zuckerman. During the months between Plaintiff's initial contact with Zuckerman in early 2005, and November 16, 2006, Plaintiff had numerous telephone calls with Zuckerman. Plaintiff had one conversation with Howard Kaye; however, that conversation occurred after he had applied for a life insurance policy and been accepted by Transamerica.[4]

_____

[2]Plaintiff contends that he entered into the transaction in order to profit from the sale of the policy after the expiration of the incontestability period. As is discussed below, there is evidence before the Court sufficient to raise an genuine issue of material fact on that question.

[3]Plaintiff's greater life expectancy would make the person purchasing the policy pay more premiums before being able to collect on the policy, thus resulting in the policy decreasing in value and being worth less to a purchaser.

[4]During that conversation, Howard Kaye indicated that Plaintiff could make $500,000 on the transaction if his health remained the same and $1,000,000 if

During their conversations, Zuckerman told the Plaintiff that one can purchase a life insurance policy for a number of reasons, in addition to purchasing same as an investment to be resold. For instance, Zuckerman mentioned that life insurance could increase the value of his estate and could be used for charitable giving. Zuckerman also told Plaintiff that he had the option of retaining any life insurance policy he purchased, rather than selling it. Zuckerman never mentioned Transamerica or any other insurance company as the entity that would issue the policy. After Plaintiff had purchased the policy and Transamerica had approved the sale, Howard Kaye told Plaintiff that he had the option of retaining the policy he (Plaintiff) had purchased. Indeed, according to Kaye Insurance, it would never sell a life insurance policy on the expectation of profiting from the sale of the policy in the secondary market.

Before he purchased the life insurance policy, Plaintiff solicited advice from his personal counsel and an insurance agent who is not a party to this litigation. Plaintiff requested that the insurance agent attempt to locate a policy for him to purchase and subsequently sell.

Efforts to sell the life insurance policy began in August, 2008. Shortly after those efforts began, Plaintiff and Howard Kaye, acting on behalf of Barry Kaye, entered into an agreement whereby Plaintiff would pay Barry Kaye a commission of 10% of the profits, if it sold the policy. The agreement also provided that the Plaintiff could use other entities to sell the policy and, if such an entity succeeded in doing so, Barry Kaye would not be owed a commission. Plaintiff did use such

_____

his health worsened. Plaintiff acknowledged that those figures were estimates, rather than guaranteed sums he should expect to receive.

entities, but neither those entities nor Barry Kaye was able to sell the policy. The policy lapsed when Plaintiff declined to make further premium payments.

With his Motion for Partial Summary Judgment (Doc. #40), Plaintiff seeks judgment against the Kaye Defendants on his (Plaintiff's) request that his transaction with those Defendants be voided in accordance with § 1707.43(A) of the Ohio Revised Code, based upon their alleged violations of Ohio's Blue Sky Law, and against Transamerica for vicarious liability predicated upon § 3905.20 of the Ohio Revised Code. As a means of analysis, the Court will initially set forth the procedural standards it must apply whenever it rules on a motion seeking summary judgment under Rule 56 of the Federal Rules of Civil Procedure, incorporating into its discussion the amendments to Rule 56, which became effective December 1, 2010. The Court will then rule on the Plaintiff's request for summary judgment against Barry Kaye, Howard Kaye, Kaye Insurance and Zuckerman, following which it will address the parties' arguments concerning the branch of the Plaintiff's motion seeking summary judgment against Transamerica.

I. Procedural Standards Governing Motions for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991)
(The moving party has the "burden of showing that the pleadings, depositions,
answers to interrogatories, admissions and affidavits in the record, construed
favorably to the nonmoving party, do not raise a genuine issue of material fact for
trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).
Moreover, given that the Plaintiff will have the burden of proof on his claims at
trial, he must show not only that the absence of a genuine issue of material fact,
but also that "no reasonable trier of fact could find other than for the moving
party."  Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986).  The
burden then shifts to the nonmoving party who "must set forth specific facts
showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the
moving party has met its initial burden, the nonmoving party must present evidence
that creates a genuine issue of material fact making it necessary to resolve the
difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245
(6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition
that a party may move for summary judgment by demonstrating that the opposing
party will not be able to produce sufficient evidence at trial to withstand a directed
verdict motion (now known as a motion for judgment as a matter of law.
Fed.R.Civ.P. 50).  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.
1989).

     Once the burden of production has so shifted, the party opposing summary
judgment cannot rest on its pleadings or merely reassert its previous allegations.  It
is not sufficient to "simply show that there is some metaphysical doubt as to the
material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

- 5 -

586 (1986).  See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party.  Anderson, 477 U.S. at 255 (emphasis added).  If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder.  10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726.  Rule 56(c)(1) provides:

> (c) Procedures.
> (1) Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). See also, Fed. R. Civ. P. 56(c)(3).

## II.  Plaintiff's Request for Summary Judgment against Barry Kaye, Howard Kaye, Kaye Insurance and Zuckerman

Levin seeks summary judgment on his claim against Barry Kaye, Howard Kaye, Kaye Insurance and Zuckerman on his claim that the life insurance policy which they sold him violated Ohio's Blue Sky Law, because that policy was not registered, as required by § 1707.44(C)(1) of the Ohio Revised Code, and those Defendants were not licensed to sell securities, as required by § 1070.44(A)(1). As indicated (supra, at 4), Plaintiff seeks to have his purchase of the life insurance policy voided in accordance with 1707.43(A), which provides:

(A) Subject to divisions (B) and (C) of this section, every sale or contract for sale made in violation of Chapter 1707 of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by the purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

The exceptions set forth in subsections (B) and (C) are inapplicable.

It is uncontroverted that the life insurance policy was not registered as a security in Ohio; nor is it controverted that Barry Kaye, Howard Kaye, Kaye Insurance and Zuckerman lacked licenses to sell securities. What is greatly contested, however, is whether the life insurance policy those Defendants sold to the Plaintiff was a security, such as had to be registered and sold by licensed individuals, a question to which this Court now turns.

The term "security is defined by § 1707.01(B), which provides:

(B) "Security" means any certificate or instrument, or any oral, written, or electronic agreement, understanding, or opportunity, that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes shares of stock, certificates for shares of stock, an uncertificated security, membership interests in limited liability companies, voting-trust certificates, warrants and options to purchase securities, subscription rights, interim receipts, interim certificates, promissory notes, all forms of commercial paper, evidences of indebtedness, bonds, debentures, land trust certificates, fee certificates, leasehold certificates, syndicate certificates, endowment certificates, interests in or under profit-sharing or participation agreements, interests in or under oil, gas, or mining leases, preorganization or reorganization subscriptions, preorganization certificates, reorganization certificates, interests in any trust or pretended trust, any investment contract, any life settlement interest, any instrument evidencing a promise or an agreement to pay money, warehouse receipts for intoxicating liquor, and the currency of any government other

than those of the United States and Canada, but sections 1707.01 to 1707.45 of the Revised Code do not apply to the sale of real estate.

(emphasis added). In In Rumbaugh v. Ohio Department of Commerce, 105 Ohio App.3d 288, 800 N.E.2d 780 (2003), the Franklin County Court of Appeals elaborated upon the statutory definition of "security:"

> In determining whether a particular scheme constitutes a security under Ohio law, courts look to the nature of the investment scheme in light of the Blue Sky Law's broad policy to prevent fraudulent exploitation of the investing public. In re Columbus Skyline Securities, Inc. (1996), 74 Ohio St.3d 495, 498, 660 N.E.2d 427. The Ohio Blue Sky Law is remedial in nature and was "drafted broadly to protect the investing public from its own imprudence as well as the chicanery of unscrupulous securities dealers." Id.

Id. at 293, 800 N.E.2d at 784. Plaintiff presents two alternative arguments in support of his premise that the life insurance policy he purchased was a security, to wit: that it was an "investment contract" and/or a "life settlement interest."

A. Investment Contract

In State v. George, 50 Ohio App.2d 297, 362 N.E.2d 1223 (1975), the court held that an "investment contract was a "security":

> when (1) an offeree furnishes initial value to an offeror, and (2) a portion of this initial value is subjected to the risks of the enterprise, and (3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and (4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise.

Id. at 302-03, N.E.2d at 1227-28 (internal quotation marks and citation omitted).

Accord, Rumbaugh, 155 Ohio App.3d at 294, 800 N.E.2d at 784; Procter & Gamble Co. v. Bankers Trust Co., 925 F. Supp. 1270, 1283 (S.D.Ohio 1996). As

a means of analysis, the Court will address in the above order the four prongs of the test adopted by the Franklin County Court of Appeals in George.

However, before engaging in that analysis, the Court will briefly address certain irrelevant arguments raised by Transamerica and the Kaye Defendants as part of their assertion that the life insurance policy purchased by the Plaintiff was not a security.

Initially, Transamerica argues that there are genuine issues of material fact as to whether this case simply involves the sale to Plaintiff of a life insurance policy on his life, or an agreement between Plaintiff and the Kaye Defendants that Plaintiff would purchase the Transamerica policy and the Kaye Defendants would subsequently sell the policy at a profit to Plaintiff. See Doc. #57 at 10. The fatal flaw with this argument is that Transamerica has failed to tie it to any of the prongs of the test to determine whether the life insurance policy was an investment contract and, thus, a security. Accordingly, the Court rejects Transamerica's irrelevant argument in this regard.

In addition, the Court rejects Transamerica's assertion that there must be "horizontal commonality," that is the pooling of funds by two or more investors, to constitute an investment contract and, therefore, a security. See Doc. #57 at 15. The "horizontal commonality" requirement flows from the obligation that the plaintiff demonstrate the existence of a common enterprise, one of elements that must be shown in order to establish the existence of a security under federal law, as recognized by the Supreme Court in SEC v. W. J. Howey Co., 328 U.S. 293, 298-99 (1946). The Sixth Circuit has held that the common enterprise element can be met only by demonstrating "horizontal commonality." Deckebach v. La Vida

Charters, Inc., 867 F.2d 278, 281-84 (6th Cir. 1989);Newmyer v. Philatelic Leasing, Ltd., 888 F.2d 385, 394 (6th Cir. 1989).

The flaw in this argument is that no decision by an Ohio court has adopted the requirement that a plaintiff prove the existence of horizontal commonality, in order to demonstrate that an investment contract is a security. Since Plaintiff's claim arises under Ohio's Blue Sky Law, this Court must apply the law of Ohio, when deciding whether the life insurance policy is a security. Accordingly, the Court rejects Transamerica's argument predicated upon the lack of horizontal commonality in this litigation.

In addition, citing decisions by the United States Supreme Court interpreting federal law, the Kaye Defendants argue that Ohio's Blue Sky Law does not apply to life insurance policies. Simply stated, this Court is obligated to apply Ohio law in this litigation invoking the Court's diversity jurisdiction. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Given the Kaye Defendants' failure to cite and the Court's failure to find Ohio authority to support the proposition that Ohio's Blue Sky Law does not apply to life insurance policies, even if they qualify as same under the George test, the Court rejects the Kaye Defendants' argument in that regard.

The Court now turns to the question of whether Levin has demonstrated that the elements of the George test do not raise a genuine issues of material fact and that no reasonable jury could fail to find that he has proved them by the preponderance of the evidence.

## 1. An Offeree Furnishes Initial Value to an Offeror

In Rumbaugh, the court noted that this prong of the George test merely requires that the offeree invest money. 155 Ohio App.3d at 296, 800 N.E.2d at 786. Herein, the uncontroverted evidence establishes that the Plaintiff invested $322,118.89 to purchase the life insurance policy from Barry Kaye. Therefore, the Plaintiff has demonstrated that this element of the George test does not raise a genuine issue of material fact and that no reasonable jury could fail to find that he has proved this prong by the preponderance of the evidence.

## 2. A Portion of this Initial Value Is Subjected to the Risks of the Enterprise

Plaintiff argues that he has met his burden with respect to this prong of the George test, given that his investment of $322,118.89 was subjected to the risks of the enterprise. This Court agrees. A portion of that sum was used to pay commissions and other expenses. If the Defendants were not able to sell his life insurance policy, he was subjected to the possibility of a loss.[5] In Rumbaugh, the court noted that the purchaser of a viatrical life insurance policy put a portion of the purchaser's investment at risk, given that the seller could go bankrupt before the insured died. Id., 800 N.E.2d at 786. Herein, Levin was subjected to the risk of suffering a loss, if the policy could not be sold. Accordingly, this Court concludes that the Plaintiff has demonstrated that this element of the George test does not raise a genuine issue of material fact and that no reasonable jury could fail to find that he has proved this prong by the preponderance of the evidence.

---

[5]It is not controverted that, because Plaintiff's life expectancy turned out to be longer than initially anticipated, his life insurance policy could not be sold.

### 3. The Furnishing of the Initial Value Is Induced by Offeror's Promises or Representations Which Give Rise to a Reasonable Understanding that a Valuable Benefit of Some Kind, over and above the Initial Value, Will Accrue to the Offeree as a Result of the Operation of the Enterprise

During his deposition, Plaintiff testified that, before he purchased the life insurance policy, he solicited advice from his personal counsel and an insurance agent who is not a party to this litigation. Indeed, Plaintiff requested that the insurance agent attempt to locate a policy for him to purchase and subsequently sell. In addition, before Plaintiff purchased the policy, Zuckerman stressed to him that life insurance had purposes other than as an investment vehicle. Quite simply, this Court concludes that the foregoing evidence demonstrates the existence of a genuine issue of material fact as to whether the initial value Levin furnished was induced by Zuckerman' promise or representations which gave rise to Plaintiff's reasonable understanding that he would be able to sell the policy at a profit after 25 months, as a result of the operation of the enterprise. Accordingly, this Court concludes that the Plaintiff has failed to demonstrate that this element of the George test does not raise a genuine issue of material fact and that no reasonable jury could fail to find that he has proved this prong by the preponderance of the evidence.

### 4. The Offeree Does Not Receive the Right to Exercise Practical and Actual Control over the Managerial Decisions of the Enterprise

The enterprise in question herein was the effort to sell Plaintiff's life insurance policy at a profit. Plaintiff had the right to exercise the only two

attributes of practical control over the enterprise, to wit: the right to sell the life insurance policy himself or to continue to pay the premiums on that policy, in the hope that his life expectancy would decline in the future, allowing the policy to be sold at a profit. As a consequence, the Court concludes that he has failed to demonstrate that the evidence raises no genuine issue of material fact on this issue, and that no reasonable jury could conclude, by the preponderance of the evidence, that he did not receive the right to right to exercise practical and actual control over the managerial decisions of the enterprise.

In sum, the Court sustains in part and overrules in part Plaintiff's Motion for Partial Summary Judgment (Doc. #40), as it relates to the question of whether the life insurance policy he purchased was an investment contract and, therefore, a security under Ohio's Blue Sky Law. The third and fourth prongs of the George test survive for trial.

B. Life Settlement Interest

As an alternative, Plaintiff argues that the life insurance policy was a "life settlement interest," as defined by § 1707.01(HH) of the Ohio Revised Code, which provides:

> (HH) "Life settlement interest" means the entire interest or any fractional interest in an insurance policy or certificate of insurance, or in an insurance benefit under such a policy or certificate, that is the subject of a life settlement contract.
> For purposes of this division, "life settlement contract" means an agreement for the purchase, sale, assignment, transfer, devise, or bequest of any portion of the death benefit or ownership of any life insurance policy or contract, in return for consideration or any other thing of value that is less than the expected death benefit of the life insurance policy or contract. "Life

settlement contract" includes a viatical settlement contract as defined in section 3916.01 of the Revised Code, but does not include any of the following:

(1) A loan by an insurer under the terms of a life insurance policy, including, but not limited to, a loan secured by the cash value of the policy;

(2) An agreement with a bank that takes an assignment of a life insurance policy as collateral for a loan;

(3) The provision of accelerated benefits as defined in section 3915.21 of the Revised Code;

(4) Any agreement between an insurer and a reinsurer;

(5) An agreement by an individual to purchase an existing life insurance policy or contract from the original owner of the policy or contract, if the individual does not enter into more than one life settlement contract per calendar year;

(6) The initial purchase of an insurance policy or certificate of insurance from its owner by a viatical settlement provider, as defined in section 3916.01 of the Revised Code, that is licensed under Chapter 3916. of the Revised Code.

The Ohio Supreme Court recently restated the familiar rule of statutory construction:

> In State ex rel. Steele v. Morrissey, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21, this court stated that when determining how to construe a statute, "our paramount concern is the legislative intent in enacting the statute." To determine intent, we look to the language of the statute and the purpose that is to be accomplished by it. See Rice v. CertainTeed Corp., 84 Ohio St.3d 417, 419, 704 N.E.2d 1217 (1999). "When we conclude that a statute's language is clear and unambiguous, we apply the statute as written, * * * giving effect to its plain meaning." In re Estate of Centorbi, 129 Ohio St.3d 78, 2011-Ohio-2267, 950 N.E.2d 505, ¶ 14. Further, this court construes a statute "as a whole and give[s] [it] such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative." State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn., 95 Ohio St. 367, 373, 116 N.E. 516 (1917); see generally R.C. 1.47(B) (in enacting a statute, it is presumed that the General Assembly intended the entire statute to be effective).

In re Adoption of M.B., — Ohio St.3d —, —, — N.E.2d —, —, 2012 WL 246515 (January 25, 2012) at ¶ 19.

Transamerica argues that the life insurance policy purchased by the Plaintiff is not a "life settlement interest," because that statute applies only to interests in such policies and not the policy itself. See Doc. #57 at 14. The language of § 1707.01(HH) supports Transamerica's position, given that the statute provides that "'[l]ife settlement interest' means the entire interest or any fractional interest in an insurance policy or certificate of insurance, or in an insurance benefit under such a policy or certificate, that is the subject of a <u>life settlement contract</u>." (Emphasis added). "Life settlement contract" is defined by the statute as "an agreement for the purchase, sale, assignment, transfer, devise, or bequest of any portion of the death benefit or ownership of any life insurance policy or contract, in return for consideration or any other thing of value that is less than the expected death benefit of the life insurance policy or contract." Consequently, the clear and unambiguous language of § 1707.01(HH) demonstrates that the Ohio Legislature intended that statute to apply only to a portion of a life insurance policy. Since Plaintiff wanted to sell his entire policy, it was not a "life settlement contract" and, therefore, not a "life settlement interest."[6]

Accordingly, the Court overrules the Plaintiff's Motion for Partial Summary Judgment (Doc. #40), as it relates to the argument that the life insurance policy he purchased was a security, by virtue of being a "life settlement interest."

---

[6]Stated somewhat differently, the Ohio General Assembly has evidenced its intent that life settlement interests are to be securities, only if an insurance policy has been divided into parts, to be sold to a number of investors, much like a share of a corporation's stock. The legislature did not intend transactions involving the purchase of an undivided life insurance policy to be the purchase of a security.

III. Liability of Transamerica under § 3905.20

As indicated, Plaintiff contends that Transamerica is vicariously liable for the acts of the other Defendants, in accordance with § 3905.20, which provides in relevant part:

> Appointment of insurance agent to act as agent of insurer
> (A) An insurance agent shall not act as an agent of an insurer unless the insurance agent is appointed as an agent of the insurer. An insurance agent who does not act as an agent of an insurer shall not be required to be appointed as an agent of the insurer.
> For purposes of this division, an insurance agent acts as an agent of an insurer when the insurance agent sells, solicits, or negotiates any product of the insurer and is compensated by the insurer.
> (B)
>
>          *                *               *
>
> (3) While an appointment remains in force, an insurer shall be bound by the acts of the person named in the appointment within that person's actual and apparent authority as its agent.

(Emphasis added).

In support of his request for summary judgment, Plaintiff relies upon Gerace-Flick v. Westfield National Insurance Co., 2002 WL 31168883 (Ohio App. 2002). Therein, the insured and her father brought an action against her insurer and its agent, which had procured the insurance policy for her. Of particular present importance, the court held that an insurer can be held vicariously liable for the torts of its agent under the theory of respondeat superior, writing:

> The acts of an insurance company's general or soliciting agents may bind an insurance company. See Clements v. Ohio State Life Ins. Co., [33 Ohio App.3d 80, 514 N.E.2d 876 (1986)]; [Ohio Rev. Code] § 3929.27, and Jim's Car Care Center, Inc. v. West Bay Ins. Agency, Inc., [1989 WL 151309 (Ohio App. 1989)]. An insurance company can be held vicariously liable for the negligence of [an agent] under the doctrine of respondeat superior. Whitmore v. Monumental Life Ins. Co. [1988 WL 142076 (Ohio App. 1988).

Id. at *11.[7]

Plaintiff moves for summary judgment on this issue, relying on § 3905.20(B)(3), which is emphasized above. In response, Transamerica initially argues:

> As an appointed Ohio Transamerica life insurance agent, Howard Kaye was obviously authorized to solicit applications for Transamerica life insurance policies. However, Plaintiff's claims in this case are not based on Howard Kaye's solicitation of an application from Plaintiff for a Transamerica life insurance policy. Instead, those claims are based on allegations that Howard Kaye and the other Kaye Defendants represented to Plaintiff that two years after Plaintiff's purchase of a life insurance policy on his life they would sell such policy at a profit to Plaintiff. There is absolutely no evidence before this Court that Howard Kaye or any of the other Kaye Defendants had any actual or apparent authority from Transamerica to make such a representation on behalf of Transamerica. Plaintiff has admitted that he has "no knowledge" that Transamerica encouraged Howard Kaye or any of the other Kaye Defendants to solicit the purchase of Transamerica life insurance policies for subsequent sale. Plaintiff's Depo. Tr., pp. 199-200.

Doc. #57 at 22. Accepting for present purposes the factual predicates of Transamerica's argument, the Court cannot agree that it demonstrates the existence of a genuine issue of material fact on the issue of its vicarious liability. Plaintiff's claims are based upon the sale of the life insurance policy to him. That act, as Transamerica concedes, was within the scope of the Kaye Defendant's authority.

Alternatively, Transamerica argues:

---

[7]Section 3929.27 of the Ohio Revised Code, which the court cited in Gerace-Flick, provides:

> A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy.

> There are clearly genuine issues of material fact concerning Howard Kaye's actual and apparent authority as a Transamerica agent to solicit the purchase of a Transamerica life insurance policy for the propose of a subsequent sale of the policy. Plaintiff is therefore not entitled to summary judgment on his vicarious liability claim against Transamerica.

Id. at 23. That argument does not cause this Court to conclude that genuine issues of material fact prevent the entry of summary judgment on the question of Transamerica's vicarious liability. The nature of vicarious liability is that liability is imputed secondarily on a party, based upon its relationship to another. McGlaughlin v. Residential Communications, Inc., 185 Ohio App.3d 515, 924 N.E.2d 891, 895 (2009). In Gerace-Flick, supra, the court held that an insurer can be held vicariously liable for the torts of its agents, as long as the agent acts within the scope of his authority, actual or apparent. Herein, the evidence does not raise a genuine issue of material fact as to whether the Kaye Defendants were acting within the scope of their authority, given that Transamerica had authorized them to sell life insurance policies on its behalf.

Finally, Transamerica argues:

> Finally, Plaintiff is not entitled to summary judgment on his vicarious liability claim against Transamerica because the evidence before this Court discloses that the alleged wrongful acts of Howard Kaye in soliciting Plaintiff to purchase a life insurance policy for subsequent sale at a profit were committed not in his capacity as a Transamerica agent, but instead in his capacity as an insurance broker not acting on behalf of Transamerica or any other life insurance company. As stated in Damon's Missouri, Inc. v. Davis, 63 Ohio St.3d 605, 610, 590 N.E.2d 254 (1992): "Whereas an 'insurance agent' acts solely on behalf of the identified insurer, an 'insurance broker' is customarily not held out as the authorized representative of one particular insurance company." Although an insurance broker obviously eventually places insurance with a specific insurance company for whom he is appointed as an agent, that insurance company is not vicariously liable for the broker's alleged misconduct or negligence committed in his capacity as an insurance broker, as opposed to his capacity as an appointed agent for the insurance company. Id., pp. 610-13.

There is no evidence in this case that Howard Kaye (or any of the other Kaye Defendants, for that matter) was exclusively a Transamerica life insurance agent. In fact, Howard Kaye Agency's Answer to Interrogatory No. 9 of Plaintiff's Interrogatories to Howard Kaye Agency (Exhibit B) discloses that Howard Kaye was appointed as an Ohio life insurance agent by numerous life insurance companies in addition to Transamerica. Additionally, the Kaye Defendants attempted to secure a life insurance policy on Plaintiff's life not only from Transamerica, but also from eight other life insurance companies. Howard Kaye Agency's Answer to Interrogatory No. 16 of Plaintiff's Interrogatories to Howard Kaye Agency.

As noted above, the first contact between Plaintiff and any of the Kaye Defendants with respect to Plaintiff's acquisition of a life insurance policy occurred in January, 2005, when Zuckerman had a telephone conversation with Plaintiff. Zuckerman did not mention Transamerica in that telephone conversation, and he never represented to Plaintiff that he (Zuckerman) was talking to Plaintiff in his (Zuckerman's) capacity as an agent or representative of Transamerica. Neither Zuckerman nor any of the other Kaye Defendants, including Howard Kaye, represented to Plaintiff that the concept of buying a life insurance policy and subsequently selling the policy at a profit was "a Transamerica idea" or "something [Plaintiff] could do only through Transamerica . . . ." Plaintiff's Depo. Tr. p. 245. Instead, such a concept was presented to Plaintiff by Zuckerman as a concept inherent in any life insurance policy, not just a Transamerica life insurance policy. Id., p. 180.

Id. at 23-24.

In Damon's Missouri, Inc. v. Davis, 63 Ohio St.3d 605, 590 N.E.2d 254

(1992), the case cited by Transamerica, the Ohio Supreme Court held in the

syllabus:

An insurance broker (or independent insurance agent) becomes an agent for a particular insurer when: (1) the broker notifies its customer, the potential insured, that he or she intends to place the customer's insurance coverage with a particular insurer; or (2) the broker accepts an application for insurance on behalf of the customer. (R.C. 3929.27, construed.)

Id., 590 N.E.2d at 255.[8]  Later in that decision, the Ohio Supreme Court emphasized the distinction between an insurance broker and an insurance agent, noting that "[w]hereas an 'insurance agent' acts solely on behalf of the identified insurer, an 'insurance broker' is customarily not held out as the authorized representative of one particular insurance company."  Id. at 610, 590 N.E.2d at 258.  The Damon's court noted that an insurance broker acts as an agent for the insured, rather than the insurer, given the lack of control the insurer exercises over an insurance broker.  Id. at 611, 590 N.E.2d at 259.  Herein, construing the evidence in the manner most favorable to Transamerica, the Court notes that the Kaye Defendants sold insurance policies issued by a number of insurers in addition to Transamerica.  Moreover, there is no evidence that the Plaintiff had a role in selecting Transamerica as the company issuing the life insurance policy.  Since Plaintiff has failed to demonstrate the absence of a genuine issue of material fact on the question of whether the Kaye Defendants acted as an insurance agent, rather than as an insurance broker, this Court concludes that he is not entitled to summary judgment on his claim that Transamerica is vicariously liable for the actions of the Kaye Defendants under § 3905.20.

Accordingly, the Court overrules Plaintiff's Motion for Partial Summary Judgment (Doc. #40), as it relates to his effort to recover from Transamerica, based on the allegation that it is vicariously liable for the actions of the Kaye Defendants.

---

[8]In Damon's, the Ohio Supreme Court concluded that the insurer was not liable for the pre-application errors committed by an insurance broker.

As a result of the Court's rulings herein, the third and fourth prongs of the George test and Transamerica's liability under § 3905.20 remain to be resolved. Of course, Plaintiff has a number of other claims which arise under the Ohio common law, which were not the subject of this motion and remain to be resolved, as well.

March 13, 2012

_____

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.